**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **UNITES STATES OF AMERICA** | § | |
| | § | |
| v. | § | Criminal No. 3:05-CR- 022-L |
| | § | |
| **CARLOS FRANCO-ACOSTA (1)** | § | |
| **BERNARDO FRANCO-ACOSTA (2)** | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court are Carlos Franco-Acosta's Motion to Suppress Statements and Illegally Obtained Evidence, filed April 4, 2005; and Bernardo Franco-Acosta's Motion to Suppress Statements and Illegally Obtained Evidence, filed April 4, 2005. An evidentiary hearing, including argument, was held on June 8, 2005. After careful consideration of the motions, response, evidence and applicable law, the court **denies** Carlos Franco-Acosta's Motion to Suppress Statements and Illegally Obtained Evidence; and **denies** Bernardo Franco-Acosta's Motion to Suppress Statements and Illegally Obtained Evidence.

**I.     Factual and Procedural Background**[1]

On February 2, 2005, the Dallas office of Immigration and Customs Enforcement ("ICE") received information from Air/Marine Operations (AMOC) in San Diego, California that a private aircraft, suspected of transporting narcotics, was en route to the Lancaster, Texas airport. Lancaster is a suburb located immediately south of Dallas, Texas. Agents William Gibson ("Gibson"), Justin Marshall ("Marshall") and Jack McClain ("McClain") arrived at the airport prior to the landing of the suspect aircraft. They were dressed in civilian clothes, and their weapons were not visible.

---

[1] Defendants did not plead with any particularity the factual bases of their motions to suppress. This statement of facts is, therefore, derived from the Government's response to Defendants' motions and the agents testimony at the suppression hearing.

**Memorandum Opinion and Order – Page 1**

Marshall and McClain speak Spanish. After the airplane landed, two Hispanic males, later identified as Defendants Carlos Franco-Acosta and Bernardo Franco-Acosta, exited the airplane. The agents approached Defendants and showed them their badges and credentials. Gibson asked Defendants if they would answer some questions, and Defendants agreed. Defendants stated that they were from Mexico and agreed to show the agents their passports. Carlos Franco-Acosta said that he was the pilot and owner of the aircraft. The agents asked if there was contraband in the airplane, and Carlos Franco-Acosta stated that there was not any contraband. Gibson asked Carlos Franco-Acosta in English if he would consent to a search of the airplane. Carlos Franco-Acosta spoke some English and consented to the search. McClain also asked for consent in Spanish. Carlos Franco-Acosta also consented in Spanish to the agents' search of the interior of the airplane. Defendants did not appear nervous and were cooperative. After Gibson determined that the airplane was locked, Marshall obtained the keys from Carlos Franco-Acosta.[2] When Gibson searched the airplane, he discovered

---

[2]Marshall testified during the hearing as follows:

> Q. Who went to go search the plane?
> A. Special Agent Gibson — after Agent McClain told Special Agent Gibson he gave consent to search the plane — started walking towards the plane and stepped up on the wing and tried to open the door, and it was locked. I was five feet behind Special Agent Gibson between him and Special Agent McClain who was with Carlos and Bernardo near the wing area. I turned around and went back to get the key and Carlos gave me the key and I gave it to Special Agent Gibson.
> Q. Did Carlos hand you the key or did you ask him?
> A. I believe they could see what was going on. We were no more than ten, twelve feet from each other.
> Q. Everybody was ten or twelve feet of each other?
> A. Yes, from the wing on the door.
> A. Again, no one had a gun drawn or holding onto either one?
> A. No, sir, none whatsoever.
> Q. After the key was given to you, did you give it to Special Agent Gibson?
> A. Yes.

Hearing Tr. 105:20-106:15.

**Memorandum Opinion and Order – Page 2**

seven bags behind the passenger seats. Gibson noticed that the zipper of one of the bags was separated, and he could see several large brick-sized bundles taped with black electrical tape. He tapped on the bag to determine how much was in it. He also tapped on all the other bags. Based on his training and experience, Gibson believed that the bundles were narcotics. It was later determined that six of the bags contained a total of 167 bricks of cocaine.

Gibson informed Marshall of the discovery and advised him to effect the arrest of Defendants. Marshall then signaled to McClain to arrest Defendants. McClain and Marshall drew their weapons and arrested both men. Defendants were handcuffed, and both were advised of their constitutional rights in Spanish by McClain, who read it directly off the *Miranda*[3] card that he was issued at the law enforcement training academy. Defendants indicated that they understood their rights and that they wanted to speak to the agents. Defendants were placed in Gibson's vehicle, and were initially interviewed by McClain in Spanish. Defendants' hands were uncuffed from the back and re-cuffed in the front. Defendants were offered coffee and bathroom breaks if needed. Because it was very cold that day, the agents made sure that the car was well heated. Defendants never indicated that they wanted to stop the interview, and at all times were calm and cooperative. Defendants were subsequently interviewed by other agents who had been called to the location. After they were interviewed, they were taken to jail.

Defendants were charged by criminal complaint with conspiracy to possess with the intent to distribute in excess of five kilograms of a substance or mixture containing a detectable amount

---

[3]In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court instructed that certain warnings be given prior to custodial interrogation in order for any statement to later be admissible in court. *Id.* at 476. Specifically, the person in custody must be informed, prior to questioning, that he has the right to remain silent, that anything said can and will be used against him in a court of law, that he has the right to have a lawyer present, and that a lawyer will be appointed if he cannot afford one. *See id.* at 467-73.

**Memorandum Opinion and Order – Page 3**

of cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A). On February 15, 2005, the grand jury returned a one-count indictment charging each of them with the same violations alleged in the complaint. On April 4, 2005, Defendants filed separate motions to suppress. Both motions contain the same legal arguments with respect to each Defendant's case and do not allege facts with any particularity. The court conducted a hearing on the motions on June 8, 2005. Defendants did not call any witnesses during the hearing. The Government called Agents Gibson, McClain and Marshall as witnesses.[4]

## II.   Defendants' Motions to Suppress

Defendants allege that the acts of the investigating and arresting officers violated their rights under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution. Defendants seek to suppress at trial (1) their arrest and all evidence as a result of items unlawfully seized at the time of arrest which relates to the arrest; (2) any testimony by the arresting officer or any other law enforcement officers or others concerning Defendants' actions while in detention or under arrest; and (3) any other matters the court finds should be suppressed upon hearing of the motions.

Defendants contend that the evidence was seized without a search warrant although the Government had ample time to obtain a search warrant, and such seizure violated their Fourth and Fourteenth Amendment rights. Defendants also contend that they were not given a warning of their constitutional and statutory rights by the person to whom Defendants allegedly made an incriminating statement, as guaranteed by the Fifth and Sixth Amendments. Defendants further contend that the statements were taken when they were illegally held and that they were denied

---

[4] After observing the agents during their testimony, the court determines that the agents were credible, and no evidence was presented to cast doubt on their credibility.

**Memorandum Opinion and Order – Page 4**

access to counsel for up to twelve hours, in violation of their Sixth and Fourteenth Amendment rights. Finally, Defendants request that in the event the court finds that Defendants' statements and the evidence are admissible, that the court make a complete finding of facts on the issue of voluntariness and lawfulness of the statements and search in question.

## III.     Government's Response

The Government contends that (1) the agents seized the evidence pursuant to lawful authority, as Carlos Franco-Acosta, the owner and pilot, voluntarily consented to the search of the aircraft; (2) Bernardo Franco-Acosta does not have standing to challenge the search of the aircraft, as he was the passenger in the airplane; and (3) Defendants each voluntarily waived their rights and made post-Miranda statements that are admissible at trial. The Government argues that consent is a well-settled exception to the exclusionary rule, and that the consent given in this case was voluntary. The Government maintains that the agents did not draw their weapons or otherwise pressure or intimidate Defendants into answering their questions. Regarding the consent to search the airplane, the Government maintains that, at the time consent was given, neither Defendant was in custody; they were in a public setting; and there was no overwhelming police presence or coercive police tactics. The Government concedes that Carlos Franco-Acosta was not advised that he could refuse to consent to the search; however, it maintains that the agents questioned Carlos Franco-Acosta in a manner that he could have declined consent.

**IV.     Analysis**

   **A.     Knowing and Voluntary Search**

There are six primary factors for consideration in determining whether consent to a search is knowing and voluntary:

> (1) the voluntariness of the defendant's custodial status; (2) presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found.

*U.S. v. Tompkins*, 130 F.3d 117, 121 (5th Cir. 1997), *cert denied*, 523 U.S. 1036 (1998). All six factors are relevant; however, no single factor is dispositive or controlling on the issue of voluntariness. *Id*. The question of whether a search was in fact "voluntary" is a question of fact to be determined from the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S.218, 227 (1973).

The court concludes that the first five factors weigh in favor of finding that the consent was knowing and voluntary. The agents approached Defendants outside the operations center of the airport. The agents wore plain clothes and displayed no weapons. The initial encounter was described as calm and cordial, and the agents identified themselves and showed or displayed their badges and credentials. Gibson asked Defendants whether they would mind answering some questions. Defendants agreed to speak with the agents, and at no time indicated that they did not want to answer the questions or wished to leave. Carlos Franco-Acosta said he was the owner and pilot of the airplane. Upon request, Defendants gave the agents their passports. Gibson requested permission to search the airplane, and his request was also translated to Spanish by McClain. Carlos

Franco-Acosta voluntarily consented to the search and gave the agents the keys.[5] Because Bernardo Franco-Acosta was less proficient in English, McClain and Marshall conversed with him primarily in Spanish. Both Defendants appeared reasonably intelligent and fully aware of what was transpiring.

With respect to the sixth factor – defendant's belief that no incriminating evidence would be found – the evidence is inconclusive. Specifically, it is unclear whether there was an attempt to conceal the narcotics. The narcotics were wrapped in black electrical tape and packed inside black bags. The black bags were located behind the passenger seat of the airplane. Defendants initially locked the airplane, but allowed the agents to unlock it and look inside. Thus the court cannot determine whether this factor weighs in favor or against a finding of voluntary consent.

Considering the totality of the circumstances, the court determines that five of the six factors weigh in favor of the fact that the consent to search was knowing and voluntary. There is no evidence in the record that the agents threatened or coerced Defendants into consenting to the search. Further, there is no evidence in the record to suggest that Defendants had any objective reason to believe that they were not free to refuse to consent.

### B. Standing to Challenge Search

Whether there is standing to contest the validity of a search "depends on (1) whether the defendant is able to establish an actual, subjective expectation of privacy with respect to the place being searched or items being seized, and (2) whether that expectation of privacy is one which society would recognize as reasonable." *United States v. Kye Soo Lee,* 898 F.2d 1034, 1037-38 (5th

---

[5] The evidence establishes that Carlos Franco-Acosta consented to the search of the airplane. The court interprets this as consenting to the agents' search of the entire interior of the airplane. Therefore the scope of the search was not limited in this regard.

**Memorandum Opinion and Order – Page 7**

Cir.1990). The evidence in the record indicates that Bernardo Franco-Acosta was a passenger in the airplane with no ownership interest. In *United States v. Dyar*, 574 F.3d 1385, 1390 (5th Cir.), *cert. denied,* 439 U.S. 982, 99 (1978), the court held that an owner of a leasehold interest in an aircraft had no expectation of privacy, and therefore lacked standing, when possession of the aircraft was given to another. Further, "a passenger without a possessory interest in an automobile lacks standing to complain of its search because his privacy expectation is not infringed." *U.S. v. Roberson*, 6 F.3d 1088, 1091 (5th Cir. 1993). Carlos Franco-Acosta told the agents that he was the owner and pilot of the airplane. Carlos Franco-Acosta consented to the search of the airplane. There is no evidence in the record to dispute that Bernardo Franco-Acosta was only a passenger without a possessory interest. The court thus determines that Bernardo Franco-Acosta lacks standing to challenge the search of the airplane, because he was a passenger and lacked a subjective expectation of privacy in the airplane that society would recognize as reasonable.

### C.     Voluntariness of Incriminating Statements

Defendants contend that they were not given a warning of their constitutional and statutory rights when they allegedly made incriminating statements. They maintain that the statements were taken when they were illegally held, denied access to counsel, and in the absence of an intelligent and understanding waiver of the right to counsel. The Government bears the burden of proof by a preponderance of the evidence that the consent was voluntary. *United States v. Gonzalez*, 121 F.3d 928, 938 (5th Cir. 1997). "A confession is voluntary if, under the totality of the circumstances, the statement is the product of the accused's free and rational choice." *United States v. Broussard*, 80 F.3d 1025, 1033 (5th Cir.), *cert. denied sub nom.*, 519 U.S. 906 (1996). "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the

Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986).

The evidence before the court is that the Defendants were not in custody at the time the agents began questioning them. Defendants voluntarily consented to answer the agents' questions, and Carlos Franco-Acosta voluntarily consented to the search of the airplane. Once Gibson discovered the narcotics, Defendants were arrested, and the agents advised them of their Miranda rights in Spanish. Defendants never indicated that they did not understand, or that they did not want to speak with the agents after they were arrested. Nothing in the record even suggests that Defendants sought to end, or requested the agents to end, their questioning after it had begun. The statements made by Defendants after they were read their rights were voluntary. There is no evidence that the agents used coercive tactics to acquire the statements. Accordingly, the court determines that, under the totality of the circumstances, Defendants' post-arrest statements were the product of their free and rational choice. The Government has met its burden, and Defendants' motions to suppress statements made when they were arrested should be denied.

## V.      Conclusion

For the reasons stated herein, the court concludes that the agents' conduct in this case did not implicate the Fourth, Fifth, Sixth or Fourteenth Amendments, and that Defendants voluntarily consented to talk with the agents; that Carlos Franco-Acosta voluntarily consented to the search of the airplane; that Bernardo Franco-Acosta lacks standing to challenge the search of the airplane; and that Defendants were warned of their constitutional rights after they were arrested and voluntarily waived those rights when they made statements after they were arrested, that no coercive police tactics were used during the initial encounter, search, or after Defendants were arrested.

Accordingly, the court **denies** Carlos Franco-Acosta's Motion to Suppress Statements and Illegally Obtained Evidence; and **denies** Bernardo Franco-Acosta's Motion to Suppress Statements and Illegally Obtained Evidence.

**It is so ordered** this 16th day of December, 2005.

Sam A. Lindsay
United States District Judge